By the Court, Bronson, J.
The defendant agreed, that in case he should sell the farm for a sum exceeding sixty thou *377 sand dollars, he would pay the plaintiff one half of the excess. Has the farm been sold, within the meaning of this contract % I think not. In the first place, the plaintiff did not pursue his authority in entering into the contract with Demmon. The power of attorney did not authorize an agreement to receive the eighteen thousand dollar payment in “ approved notes,” or in any thing else but money. A power to sell for a certain sum, means for so much ready money, unless there is something in the power, or the usage of trade, to manifest a different intention ; and there is nothing of that kind in this case. Again, the contract gave Demmon the option of abandoning the purchase on forfeiting the two thousand dollars paid down. If Demmon did not make the payment due on the first of May, the agreement was to be “ held void in all respects,” save as to the $2000 previously paid, which Demmon "was to forfeit<c as liquidated damages.” The power only authorized an absolute sale—-not a sale which left it to the option of the vendee whether he would have the land or not. The contract with Demmon did not bind the defendant, and for that reason there has been no sale of the farm.
But it is said that the defendant has ratified the contract by receiving a part and suing the plaintiff for the residue of the two thousand dollars paid down. Although I am not prepared to say that there can be a ratification, without writing, of a contract for the sale of land, I will assume that the argument is well founded. We have then a valid contract. What does it amount to 1 It gives Demmon the refusal of the farm at a certain price until the first day of May. If he then pays and secures the price, he may have the land ; but he is under no obligation to take it if he prefers to forfeit the two thousand dollars already paid. This was in no sense a sale of the farm. If an executory contract would do, it must at the least be an absolute agreement to sell and purchase—binding on both vendor and vendee. Here the vendee is not bound; he may take the land or let it alone as he pleases. This is not a sale.
But the case may be put upon still broader ground. If Dem *378 mon had been bound to take the land, the plaintiff could not succeed. The parties by their covenant did not contemplate a mere executory agreement to sell, but an executed contract of sale—a transfer of the property from the vendor to the vendee, and payment made, or security given for the purchase money. (Edwards v. Farmers’ Loan Co., 21 Wend. 467, 492.) A different construction of the covenant would work the grossest injustice. There has been no sale of the farm. The defendant owns it still.
The plaintiff’s counsel attaches considerable importance to the testimony of Demmon, and to what was done, or rather what was not done on the first of May. Demmon says, in substance, that if the deed had been offered he should have complied with the contract on his part—that he was always ready to do so down to the second day of May. If his willingness to complete the purchase, or his ability to do so, were facts of any importance in this action, I should wish to have them found by a jury before I believed them. He was to pay eighteen thousand dollars on the first day of May “ in cash or approved notes,” and he can neither tell how much cash, or whose notes he had on that day. So much for his ability. Now for his willingness to complete the purchase. And first, it was at his option whether he would do so or not. The defendant was bound ; he was not. If he intended to go on and complete the purchase, it was necessary for him to move in the matter. If the first day of May was suffered to pass without tendering his money and securities, the contract would be at an end. Knowing all this, he never informed the defendant that he intended to make the payment and have a conveyance. And when -the last day arrived, he did not go to New Rochelle to make a tender and demand a deed. He not only did not seek the defendant, but he did not remain at New-York so that he could be found by the vendor. He had gone to Poughkeepsie, and, so far as appears, did not return on that day. From the language of his conduct, I should infer that he had made up his mind that it was better to lose the two thousand dollars *379 already paid, than it was to pay seventy-eight thousand dollars more and have the farm. Farms in the neighborhood of New-York were not worth quite so much money on the first day of May, 1837, as they had been estimated at a few months before. Many bubbles had already exploded, and others were just upon the point of sharing the same fate.
That the defendant was willing to go on with the contract, I infer from the fact that he went to New-York to seek Demmon, although he was under no obligation to do so. He might have remained at home until the day was passed and the contract was at an end. But it is said that the defendant did not wait long enough for the return of Demmon. I think he did. He was seeking a man who was under no obligation to buy if he had been discovered, and the circumstances were abundantly sufficient to show that all prospect of getting eighty thousand dollars for his farm, even in “ approved notes,” was at an end. The defendant found when he got to New-York, that he had come upon an idle errand, and I do not think him worthy of cénsure for not remaining there a longer time. He might have feared being laughed at ; though for that matter I believe there was no merriment in the city of New-York in May, 1837.
But let it be granted that Demmon was both able and willing to complete the purchase, and that the defendant did not do enough by way of urging on the speculation. This does not prove that the farm was in fact sold. If the plaintiff was suing in assumpsit upon a quantum meruit for his services, or in an action on the case, it might, perhaps, be important to inquire whether the sale had not fallen through in consequence of some fault on the part of the defendant. But the plaintiff is suing upon the covenant, and he avers that the defendant “ did sell the said farm for a sum exceeding the said sum of sixty thousand dollars, to wit, for the sum of eighty thousand dollars.” If the plaintiff could show that the defendant was in the wrong in not effecting a sale, that would not sustain an averment that a sale was actually made.
*380 In every view which I have been able to take of the case, the verdict is clearly wrong.
New trial granted.